UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENATA MAZZIO GITTLER

_____

Write the full name of each plaintiff.

-against-

Dutchess County Government,
Timothy Mahler, Stephen Oscarlece
& Richard Byrne

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

Second Amended complaint

16 CV 04612 (NSR)(PED)

(Include case number if one has been
assigned)

Do you want a jury trial?

☒ Yes    ☐ No

(second) AMENDED

EMPLOYMENT DISCRIMINATION COMPLAINT

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 06|15|17

## I.   PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

RENATA                          MAzzio GiTHLER
_____
First Name              Middle Initial      Last Name

PO Box 803
_____
Street Address

Sullivan County, Rock Hill, New York   12775
_____
County, City                    State          Zip Code

(845) 283-1014
_____
Telephone Number                Email Address (if available)

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   Dutchess County Government
_____
Name
22 Market Street
_____
Address where defendant may be served
Dutchess County, Poughkeepsie, New York 12601
_____
County, City                State          Zip Code

Defendant 2:   Timothy Mahler   (former OCIS Commissioner)
_____
Name
63 Jennie Lane
_____
Dutchess County, Pleasant Valley, New York 12569
_____
County, City                State          Zip Code

Page 2

Defendant 3:

_Stephen Oscarlece (OCIS Deputy Commissioner)_
Name

_503 Haight Avenue_
Address where defendant may be served

_Dutchess County, Poughkeepsie, New York 12603_
County, City    State    Zip Code

## II.  PLACE OF EMPLOYMENT

_Defendant 4: Please see attached sheet for Richard Byrne_

The address at which I was employed or sought employment by the defendant(s) is:

_Dutchess County Office of Central & Information Services (OCIS)_
Name

_503 Haight Avenue_
Address

_Dutchess County, Poughkeepsie, New York 12603_
County, City    State    Zip Code

_DATES of Employment: January 14, 2014 – May 20, 2015_

## III.  CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

[X] **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

[X] sex: _female gender_

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B. Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☒ Other (may include other relevant federal, state, city, or county law):

NEW YORK STATE CIVIL SERVICE LAW

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☐ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify):  _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

I was discriminated against by the defendants because I am of the female gender. Because of my protected class, I was forced to endure a hostile workplace & disparity in treatment. I was denied promotional opportunities and ultimately, I was wrongfully terminated in retaliation for making complaints about the discriminatory treatment and for planning to report it to the internal EEO person, once someone was hired.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

(Please see attached full complaint) facts

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?    2015

☐ No

Have you received a Notice of Right to Sue from the EEOC?    (attached)

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?    March 17, 2016

When did you receive the Notice?    (not sure of exact date)

☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Admit guilt and wrong-doing; retract defamatory statements made about my job performance; adjust my employment record; pay monetary damages due to lost wages, including but not limited to loss of salary level and loss of retirement time and wage; pay for my incurred expenses; and pay pain and suffering damages, including the damages they caused to my professional reputation.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

6/14/17
Dated

Plaintiff's Signature

RENATA                    MAZZIO  GITTER
First Name          Middle Initial      Last Name

PO Box 803
Street Address

Sullivan County, Rock Hill, New York    12775
County, City                  State            Zip Code

(845) 283-1014
Telephone Number

Email Address (if available)

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes  ☒ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

**Case # 16-CV-04612 (NSR)** (PED)
**Renata Mazzio Gittler - Defendants** *(continued)*

**Defendant 4:**
**Richard Byrne**
Dutchess County Office of Central and Information Services (OCIS)
503 Haight Avenue
Dutchess County, Poughkeepsie, New York, 12603
(845) 486-2450

EEOC Form 161 (11/09)

16-CV-04612(NSR)(PED)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Renata M. Gittler<br>P.O. Box 803<br>Rock Hill, NY 12775 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2015-03273 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

| Enclosures(s) | Kevin J. Berry,<br>District Director | March 17, 2016<br>(Date Mailed) |
|---|---|---|

cc:

Attn: Timothy E. Mahler, Commissioner
DUTCHESS COUNTY, OFFICE OF CENTRAL
503 Haight Avenue
Poughkeepsie, NY 12603

Caroline E. Nelson, Esq.
Dutchess County, Department of Law
22 Market Street
Poughkeepsie, NY 12601

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

1. I was discriminated against due to the fact that I am of the female gender and I am an outspoken advocate for social justice and equal rights. I am a member of a protected class based on my gender.

2. I endured a hostile work environment toward women with blatant inequities between the treatment of men and women: Women, including myself, were yelled at, demeaned, ignored and were required to work harder than our male counterparts to attain professional recognition and promotion. During the 16 months of my employment at OCIS, I never witnessed any hostile behavior toward male employees.

3. I now believe that I was not hired at OCIS for the original Project Leader/Webmaster position for which I applied and a lesser-educated person without leadership skills was hired because he was male. Later in my employment, this would become clear, as it was the general norm to hire only white males into positions of power at OCIS. I was offered a lower-grade, non-supervisory position - Web Designer/Analyst - by OCIS Commissioner Timothy Mahler, which I accepted. During the multiple interviews and phone conversations with Mr. Mahler, on more than one occasion, he stated that after proving myself to be competent and hard-working, I would be considered for a leadership position and/or Civil Service pay grade increase. At the time of my hiring, I had recently earned my certification from the New York State Education Department (NYSED) as a School District Leader (SDL) - a credential required to be a superintendent, assistant superintendent and/or principal in a school district. And, I completed my studies in a post-graduate certificate of advanced studies (CAS) program in Educational Leadership. The CAS is a common step directly prior to doctoral studies in educational administration. I earned a 4.0 GPA in the program.

4. After scoring 100 on my Web Designer/Analyst exam and being appointed permanently to my position at OCIS, I met with Mr. Mahler (approximately one month later) to discuss the raise/promotion he had

1

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

promised me. I knew he had just authorized a raise and promotion for at least two current male employees at OCIS. We met in December 2014 and again in February 2015, which left him enough time to request the increase/promotion in the proposed 2016 Dutchess County budget.

5. Mr. Mahler told me that he was impressed with the quality of my work and that I had made him look good in the eyes of the county executive (for whom I was now doing a variety of graphic design and web work). He said he would not forget about me. Three months later he fired me. During our conversations, he never mentioned that I was on probation or that I was ineligible for a promotion because of a probationary period.

6. During this time, the hostile work environment at OCIS, discriminatory promotional practices based on gender and the disparity in the treatment between the men and women became undeniable. Shortly after my second meeting with Mr. Mahler in February 2015, I reported the illegal discriminatory behavior (based on my gender) that I was experiencing to my trainer and senior employee, Tracy Lee. I spoke with Ms. Lee about the inequities in the treatment and promotional opportunities between the men and women at OCIS. I discussed with her my personal situation in the office in regards to the gender discrimination I was experiencing and we discussed the hostile work environment at OCIS.

7. Ms. Lee told me that Mr. Mahler was a chauvinist and that he had told her that he was taught by his father that women should be subservient. Ms. Lee said that was one of the reasons why the male managers (all the administrators at OCIS at that time were white males) could get away with treating the women at OCIS differently than the male employees and why hostility toward the females in the office was allowed. Ms. Lee told me that she and other women in the office had been passed over for promotional positions. I told Ms. Lee that I was going to file an EEO complaint against the defendants.

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

8. As it turned out, I was unable to file an EEO complaint at that time because the EEO person had retired and there was no one in the position. I was planning to file a formal complaint with EEO as soon as Dutchess County personnel notified employees that a new person was hired. I never received any such notification.

9. I was unable to report the hostile treatment to any of my other managers, because they were the perpetrators of the discrimination: Richard Byrne, Stephen Oscarlece and Timothy Mahler.

10. These three managers knew I was vocal about their discriminatory practices and treatment and they knew that I had reported it to and discussed it with Tracy Lee because my conversations with Ms. Lee were overheard by one or more of the defendants and other people in the office, and were part of the office gossip pipeline. This information included that I was going to report them to the EEO person as soon as one was hired.

11. They fired me in retaliation for my protected activity of complaining of illegal gender discrimination and because they knew I intended to make an internal EEO complaint as soon as there was someone hired to whom I could report it.

12. Mr. Mahler, Mr. Oscarlece and Mr. Byrne fired me on the final day, in the final hours of what they said was my probationary period. As per NYS Civil Service Law, I was not notified of my probationary period nor was I ever provided with a written performance review/evaluation.

13. In addition, there may be evidence that will prove that I was not actually on probation at the time I was terminated. And, as a Civil Service employee, Dutchess County did not grant me my rights under NYS Civil Service Law, Section 75.

3

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

14. The defendants fired me under the pretext that I had not learned cascading styles sheets (CSS) coding. I believe the evidence will show that I was fired because of retaliation against me for my protected activity and that their stated reason for my termination was pretextual.

15. This pretext is additionally apparent by the fact that the defendants claimed to fire me for failing to learn CSS, yet directly after my firing, Mr. Mahler requested that a new graphic design position for OCIS - one that did not require knowledge of CSS - be included in the Dutchess County budget.

16. During the 16 months I worked at OCIS, I was never provided with the CSS training that was promised and obligated to me by OCIS.

17. I was never given a verbal or written performance evaluation. No statements were made to me that indicated or implied that I was not doing a satisfactory job or that my job depended on me learning CSS.

18. In fact, I had received countless accolades for my work from Dutchess County department heads, the county executive, colleagues and our subcontracted clients.

19. In addition, I was never asked to do any work in CSS (which I was studying on my own time at home via a book I had purchased), nor did any of the multiple projects that I was told were my priority to complete require me to utilize CSS.

20. After being wrongfully terminated, I filed multiple FOIL requests to Dutchess County to retrieve the many emails and work products that would help prove my wrongful termination case and show that not learning CSS was just a pretext for the real reason I was fired. Dutchess County denied me access to the proof I needed and refused to substantially fulfill my FOIL requests.

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

21. I filed a complaint with the New York State Division of Human Rights (NYSDHR) and asked them to request these documents from Dutchess County - they never did and their investigation was non-existent.

22. I was qualified to do my job as a Web Designer/Analyst at OCIS, I am a member of a protected class, I was denied a promised promotion and that my employer - the defendants - took adverse action against me by wrongfully terminating my employment in retaliation for a protected activity, allow my complaint to stand strong under the McDonnell-Douglas test.

23. The gender discrimination I experienced included pervasive chauvinistic attitudes and disparity of treatment (and promotional opportunities) between the females and males at OCIS, including myself.

24. As a new employee, it became apparent early on that something was "wrong" and although the women in the office informed me of the inequities they had endured (and I personally experienced how I and the other females were treated differently from the males), they seemed to accept the unequal treatment as "just the way things were done around here" rather than what it really was: illegal disparate treatment and discriminatory practices based on gender.

25. Most of the women at OCIS had dedicated their careers to Dutchess County and worked there for 15, 20 and 30 years. As with a "Stockholm syndrome-type mindset" the women seemed to accept the status quo and although they would get frustrated by it, they did not challenge it for it was what they seemed to accept as "normal" and for fear of retribution. *There is much literature available about the long-term effects of working in an abusive/hostile environment and how one comes to "accept" it.*

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

26. My unlawful termination was in retaliation for my complaints to Ms. Lee and/or the fear by my supervisors that I would make an internal EEO complaint in the future.

27. I was fired on the last day of my supposed, extended probation at the end of my work day.

28. I was never given any verbal or written counseling that I was not progressing in all aspects of my job at a satisfactory pace, nor was I ever given any verbal or written performance evaluation of my work as being unsatisfactory in any way, shape or form. In fact, throughout my 16 months at OCIS, I received praise and accolades for my work.

29. On May 20, 2015, I was brought into an OCIS conference room and was fired by Mr. Mahler, Mr. Oscarlece and Mr. Byrne (Mr. Mahler snickered at me while he delivered the news). I was shocked. It seems that they had hidden their intention to terminate me so that they could inflict the most financial and professional pain upon me as possible (even the male college recruit - Skylar Dodge - who was fired from his position, was given at least one week's notice of his pending termination so he could prepare himself).

30. The defendants knew that I was the main breadwinner and supplier of health insurance for my family. They took everything they could away from me in an unduly cruel manner, including my (approximately) $66,000 salary I had worked my life to attain, my health insurance and my dignity.

31. As a post-graduate woman, educated in administration, planning on pursuing my doctoral studies, and as a lifelong learner, I had gladly engaged in many professional development seminars while at OCIS. I even bought a book on HTML and CSS to learn the coding I was told was needed to perform my job (although in 16 months, I had not needed nor was I ever asked to utilize CSS in any of my work projects).

6

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

32. When the defendants fired me, they stated that it was because I did not learn CSS (note: they never provided me with the CSS training they promised when I was hired - thus, not fulfilling their Civil Service employer obligation.)

33. It is illogical, pretextual and out of character that I - someone constantly learning new things and participating in any and all professional development opportunities available to me - would risk my livelihood, my lifestyle, my home, my health insurance, my retirement and my job security by refusing to learn CSS (as the defendants contend).

34. I was provided with all the other training I needed to do my job at OCIS. I was never provided CSS training. OCIS was obligated to provide me with this training if it was a mandatory part of my job. If the defendants knew that this training was the factor between retaining and losing my job and still did not provide me with CSS training, this additionally supports that my termination was unlawful and that the reason the defendants stated is pretextual.

35. I was made to feel inferior to my male counterparts and the defendants' negative attitudes toward me undermined my confidence and self-esteem as a human being.

36. I was never told I was on probation until it was extended - in fact, my probationary period may have actually ended prior to my termination and although the potential Civil Service violation aspect of this is a separate issue, it speaks to the pervasive attitudes of the defendants to "do as they pleased" in their domain and is relevant to the discriminatory behavior I experienced and witnessed.

7

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

37. My first knowledge of Dutchess County OCIS was when I applied for the Project Leader position that was eventually given to Mr. Byrne. I was told by Mr. Mahler that my skills were the perfect fit for a new position he had in mind and that Mr. Byrne had more advanced coding and leadership skills.

38. Mr. Mahler informed me that only three people had answered the ad for the Web Project Leader position. Me, Mr. Byrne and one other person, who Mr. Mahler stated was totally unqualified. Mr. Mahler told me that since Mr. Byrne appeared to have more IT experience and because he had worked at VH1 (Mr. Mahler said he thought that was cool), he was going to hire him as the Web Project Leader. Subsequently, I watched as Mr. Byrne struggled with the leadership duties of his position and learning the skills necessary for his job. I also observed Tracy Lee perform some of Mr. Byrne's duties in order to get the required work completed - especially with the redesign of the City of Beacon website.

39. Mr. Mahler informed me (see email below) that he was creating a new position based on my expertise and that he would provide me with any web development training I would need, including CSS.

Email from Mr. Mahler:

```
August 28, 2013
>> Hi Renata:
>>
>> This email is to let you know that I've offered the Project Leader -
>> Webmaster person to another candidate, who just had a broader
>> webmaster and technical background. With that said, I was extremely
>> impressed with you on different levels and believe you would be a
>> great addition to the OCIS staff. My hope is that we can meet to
>> explore another opportunity to be a major part of the Web team.
>>
>> I met yesterday with our County Executive's Office to discuss my
>> proposal to expand the Web team to start to offer Website development >>
services to local municipalities. It's been agreed to move forward >> with
this Shared Services initiative including adding a new position >> to make
this a three person team.

>> Your back ground and expertise in communications, web design, graphics and
photography would be a great fit. Along with this, we would provide training
on web development (HTML, CSS, etc..).
```

8

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

```
>> I have to work out details with our Human Resources department, but
>> expect that the salary would be minimally 11% and more likely about
>> 20% higher than your current $52K salary.
>>
>> I hope you are interested in discussing this other job opportunity and
look forward to hearing from you.
>>
>> Best,
>> Tim
```

40. January 14, 2014 - First day at Dutchess County Office of Information and Central Services

Department (OCIS).  Immediately began working with Tracy Lee for my training in the Open Text web

management software used to maintain the Dutchess County internet and intranet websites.  Also

began learning Consolidated Calendar duties and working on the City of Beacon website.  At some point,

I was advised by Mr. Mahler that Mr. Byrne would teach me CSS.  Although through my tenure at OCIS

I asked Mr. Byrne to train me in CSS, he never did.

41. Part of the disparity in treatment between females and males at OCIS included that the male

employees were provided with the training they needed to be successful at their jobs.

42. Even Mr. Dodge, who was fired from his position at OCIS, was given the training  he needed to learn

his job.  I personally saw him being trained at different times.  In addition, Mr. Dodge was given at least

a week's notice that he had not passed his probationary period.  I was informed by colleague Cathy

McMahon that Mr. Dodge was fired because he was watching videos and not doing his work.

43. I worked non-stop from day one at OCIS.  I was constantly busy with multiple projects, and I was

receiving countless accolades from the people for whom I did work.  My clients included: Department of

Health, County Executive's office, Veterans Services, Budget Office, DC Airport, Medical Examiner, Loop

Bus, Public Works & Parks, Planning & Development, Stop DWI, Weights & Measures, Solid Waste

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

Management, Dutchess County Historian, Office for the Aging, City of Beacon and Town of LaGrange (who chose my design for their new website).

44. In addition, when I was hired, my job duties were not defined to me as including the responsibility of doing graphic design and web work for the county executive's office and initiatives. That responsibility was given to me at a later date, I was told, because I was doing such great work.

45. I FOILed Dutchess County to provide me with multiple emails that existed on my work computer that were sent to me by many persons for whom I did work that would clearly show that they were pleased with my performance, efficiency and work products. The requests were denied by Dutchess County and the NYSDHR was never able to utilize this information in its decision.

46. As required by Civil Service guidelines, if a manager is unhappy with the progress of an employee's work, s/he is required to provide the necessary supports to help the employee be successful.

47. In my case, I was never even verbally told by anyone at OCIS that my progress was not satisfactory nor was I ever told by Mr. Byrne or anyone else that any person I had done work for was unhappy with their final work products - not once during my 16 months of employment at Dutchess County OCIS.

48. In fact, I was told many times by the people for whom I did projects, that they were pleased with my work. In addition, all the training in which I participated, I excelled at, so much so, that within a few months of learning Open Text, I was training others how to use it. And, I wrote, compiled and designed the Open Text users guide for the City of Beacon. (Prior to my job at OCIS, I had never used Open Text.)

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

49. I was never given a written performance evaluation or any other written documentation during my 16 months of employment at Dutchess County OCIS that I was not performing my job duties at a satisfactory level.

50. In addition, I created web designs, web management, web page construction and graphic works of art satisfactorily throughout my tenure at OCIS; my website design was chosen by the Town of LaGrange over Mr. Byrne's design and I was utilized on many occasions by the county executive and his communications team to do their graphics work.

51. At one point, Mr. Mahler told me that I was making him look great with the county executive's office (County Executive Marcus Molinaro had even referred to me as "his artist").

52. Additional praise and accolades I received included, but are not limited to, the following: Colleen Pillus and Jessica White in the County Executive's office, the secretary in the Legislature, Aisha Phillips at the Health Department, Joe Ryan and Mary Kaye Dolan at the Office for the Aging, Lindsay Carille from the Division of Solid Waste, Mayor Randy Casale and Sarah Burke from the City of Beacon, and Town of LaGrange Supervisor Alan Bell.

53. In addition, the Dutchess County Historian, William P. Tatum III, a person I had never met or spoke with before, called me and told me that my reputation for producing amazing work had gotten around and he was hopeful I could do some work for his department.

54. Subsequently, I constructed new web pages and created new design layouts for him, posted his events materials and updated and reconstructed the Dutchess Heritage Days logo for his department.

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

55. I kept copies of the email correspondence from many of these people saved in my Outlook email on my OCIS computer, but I have been denied access - via FOIL - to these documents by Dutchess County.

56. During my time at OCIS, I participated in a variety of professional development seminars and never refused any training.

57. I am a lifelong learner and embrace the chance to participate in professional development, college courses, online training, webinars and any other training available to me.

58. I left a secure job at BOCES, where I had been for many years, to take the position at OCIS. It is illogical that I would then refuse to learn something required for me to keep my new position. I am a post-graduate-educated individual who takes pride in my work and I have worked diligently for many years to build my professional reputation as a competent, high-performing individual.

59. To illustrate the difference between how the defendants depicted me to the NYSDHR and the person I actually am, I am including the following information. Approximately, two years prior to working at OCIS, I graduated from a post-graduate administration program with a 4.0 GPA.

60. These are excerpts from letters I received from doctorate-educated professors and former colleagues: highly effective person, excellent planner and problem solver; comes up with ideas and solutions that others miss; highly skilled and knowledgeable...(invested) in the improvement and in professional development of...staff; has high ethical standards; committed to excellence; can lead a project to successful completion; collaborative, earned multiple state and national awards including one for the celebrating culture and diversity initiative; a very positive influence on everyone with whom she works; her work has been relevant, insightful, prompt and scholarly as evidenced by her 4.0 GPA.

12

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

61. I was told by OCIS female employees about their experiences at OCIS. Tracy Lee and Laura Lokey told me that they were both passed over for promotions. Ms. Lokey told me that the promotions were given to less-qualified males. I discussed with them that this was discriminatory behavior.

62. When Mr. Mahler hired me, he stated to me that he would consider me for a raise (grade adjustment) and/or a promotion. While working at OCIS, I was informed that at least three males - Joe Rutkowski, Josh Waters and Chris Wren either received a raise and/or promotion. All of them were provided with the training necessary to be successful in their positions.

63. During the 16 months of my employment, there were no female project leaders nor were any females promoted.

64. When I accepted the position at OCIS, it was in part, because of the statements made to me by Mr. Mahler that made me hopeful of career advancement. Taking the Web Designer/Analyst position at OCIS was a planned strategic career move on my part that would allow me to enhance my design and web skills and knowledge, and eventually lead to a managerial position.

65. I was outspoken about the inequity in the treatment of women: I never witnessed any males in the office being talked down to in a condescending manner (or yelled at), yet I witnessed Jackie Emslie, on multiple occasions, spoken to by her male manager with extreme disrespect. On one occasion, I stepped in front of Ms. Emslie to protect her from his hostility. I witnessed Laura Lokey spoken to in a rude manner by her male manager. I witnessed Mr. Oscarlece and Mr. Mahler walk by female employees and ignore them - this also happened to me on multiple occasions. Female colleague Cathy McMahon told me that her male project leader didn't respect her professional opinions and ideas and it was because he was a chauvinist. She said that was very frustrating and demoralizing to her.

13

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

66. I was spoken to by Mr. Oscarlece on more than one occasion in a rude, demeaning manner: Once when I needed to leave two hours early to take care of an unexpected health issue with my mother who was living with me at the time. This conversation included him telling me to put my mother in a nursing home like he did to his mother-in-law.

67. On another occasion. I was working with programmer Jeffrey Litt having a discussion about an application icon I was re-designing for him. Mr. Oscarlece embarrassed me in front of my male colleagues when he rudely told me to leave the area, even though I was in the middle of the work-related conversation.

68. The culture at OCIS seemed embedded with disparate treatment between the males and females. Tracy Lee told me stories about what Mr. Mahler had shared with her about his chauvinistic upbringing and Ms. Lee expressed to me that she thought this was one of the reasons why there was not equality between the males and females at OCIS.

69. I was told by my female colleague Beth Wright that one of the male employees in the office had been "stealing time" from OCIS by not accurately signing in and out on his timesheet. She noted that this was common knowledge and that Mr. Oscarlece and Mr. Mahler simply gave him a warning and kept him on as an employee (even though he was still on probation). I was also told by Beth Wright that Mr. Mahler and Mr. Oscarlece were denying her accommodations for her degenerative ALS condition. Would they have done this to a male employee?

70. After witnessing the disparity in behavior and hearing the stories of chauvinism and inequity of the females in the office, I began inquiring about why the women did not stand up for themselves. I advised them that this was not what other offices I worked in were like. I was advised that the way it

14

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

worked at OCIS was to just do your job and to not make waves. These were high-pay positions and these women had dedicated their careers to OCIS. They did not want their positions down-sized and end up on the unemployment line. The women also seemed to downplay the disparity in treatment. It was almost as if they had worked there so long that they just "expected" to be treated in this way. This was the accepted culture of the workplace.

71. Mr. Mahler once told me that one of the female employees didn't believe she could get down-sized, but she "stopped laughing" when he handed her a pink slip.

72. On another occasion, Mr. Mahler took three of his white, male project leaders and managers to recruit students for internships at Marist College in Poughkeepsie. I was vocal about the fact that only white males were going to recruit students from a multiethnic, multi-gender college. I stated to some of my female colleagues that it was common knowledge that students needed to identify with teachers and recruiters and that it was short-sighted at best and discriminatory at worst for Mr. Mahler to not include at least one female and one person of color in his recruitment efforts. I know that males in the office overheard our conversation and reported it back to the defendants.

73. During my 16 months at OCIS, there were occasions when gender bias-type statements were made to me or around me that I directly heard: I was called a little girl, I was told that girls don't wear ties, I was called a derogatory name, I was teased about something that made me feel uncomfortable and in a conversation with a male employee, he stated that women should be seen and not heard. I was ignored at times for no reason. I was made to feel that I was somehow "below" my male counterparts and there was this underlying pressure to comply with the "rule" that all women were supposed to follow: keep your head down and your mouth shut.

## 16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne - *Second Amended Complaint*

74. The defendants made me move all the articles, including my computer, from one work cubicle to another one on the other side of the office - approximately four days of manual labor - right before they fired me (so it could be ready for my replacement). This is illustrative of an additional example of how they demeaned me in front of my colleagues.

75. My work products are still being utilized by Dutchess County and its clients.

76. If my work and my timeline for learning the required software and coding were not adequate, why was I appointed to permanent status after scoring 100 on my civil service exam? Why not hire someone else from the list?

77. Since my termination, I have suffered professionally: My reputation is permanently tainted by the termination and the mistruths that surround it. Financially: I was forced to go on employment to survive and subsequently accept a job at a lower pay; my retirement eligibility has been extended; and my retirement income has declined. I have spent hundreds of dollars in court fees, copying, postage, travel, etc. in hopes of procuring justice.

78. Female colleague, Ms. Emslie, would thank me almost daily for bringing a "ray of sunshine" to OCIS.

79. Claim I - Against Dutchess County for Violation of Title VII of the Civil Rights Act of 1964.

80. Claim II - Against All Defendants for Violation of the New York State Human Rights Law (NYSHRL).

## Jury Demand

I request that my (Second Amended) Complaint be heard by a Jury.

16

**16-CV-04612 (NSR) (PED) - Renata Mazzio Gittler vs. Dutchess County, Timothy Mahler, Stephen Oscarlece and Richard Byrne -** *Second Amended Complaint*

## Subject Matter Jurisdiction

This (Second Amended) Complaint is being filed in the correct Jurisdiction because my former place of employment is located in Dutchess County, New York. And, my action is brought for discrimination in employment and retaliation for my protected activity pursuant to: Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. - 2000e to 2000e-17 and New York State Human Rights Law (NYSHRL), NY Exec. Law 290 to 297.

## Venue

The Federal Judicial District Court of the Southern District of New York includes Dutchess County and thus is the proper court to file my (Second Amended) Complaint.

**Filing of Second Amended Complaint 16-CV-04612 (NSR)(PED)**

Renata Mazzio Gittler
PO Box 803
Rock Hill, NY 12775

June 14, 2017

Clerk of Court, Pro Se Intake Unit
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Dear Clerk of Court on behalf of the Honorable U.S. District Judge N.S. Roman:

Enclosed are the *Second Amended Complaint* papers for my case
- one original and two courtesy copies.

As required by the Court, I served the defendants' attorney, David Posner, today, with a complete copy of this complaint via certified, return-receipt priority USPS mail.

Enclosed is my completed *Affirmation of Service*.

Please let me know if you need anything else at this time.

Thank you kindly,

Renata Mazzio Gittler

Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Renata Mazzio Gittler

_____
*(List the name(s) of the plaintiff(s)/petitioner(s).)*

16 Civ. 04612 (NSR) (PED)

- against -

**AFFIRMATION OF SERVICE**

Dutchess County Government,
Timothy Mahler, Stephen Oscarlece
and Richard Byrne

_____
*(List the name(s) of the defendant(s)/respondent(s).)*

I, *(print your name)* Renata M. Gittler, declare under penalty of perjury that I
served a copy of the attached *(list the names of the documents you served)*: _____
_____ Second Amended Complaint _____
_____ Case # 16 - CV - 04612 (NSR) (PED) _____
upon all other parties in this case by *(state how you served the documents, for example, hand delivery,*
*mail, overnight express)* Priority Mail (USPS) _____ to the
following persons *(list the names and addresses of the people you served)*: _____
____ David Posner of McCabe & Mack law firm, _____
___ the attorney representing all of the defendants. ____

on *(date you served the document(s))* June 14, 2017

6/14/17 _____
Dated

Renata Mazzio Gittler
Signature
PO Box 803
Address
Rock Hill, NY
City, State
12775
Zip
(845) 283-1014
Telephone Number

_____
E-Mail Address

*Rev. 01/2013*

This envelope is made from post-consumer waste. Please recycle - again.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY®
# ★ MAIL ★

DATE OF DELIVERY SPECIFIED *

USPS TRACKING™ INCLUDED *

$ INSURANCE INCLUDED *

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

RECEIVED
JUN 15 2017
U.S.D.C.
WP

FROM:
Renata Mazzio Gittler
PO Box 303
Rock Hill, NY 12775

WP
SDNY

CERTIFIED MAIL®

7016 0750 0001 5722 3574

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS

ORDER FREE SUPPLIES ONLINE

JM®

U.S. POSTAGE
ROCK HILL, NY
12775
JUN 15 17
AMOUNT
$12.75
R2305K137488-07

1006

10601

Clerk of Court, Pro Se Intake Unit
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

UNITED STATES
POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.